JONES v. GOULD et al.

(Supreme Court, Appellate Division, First Department. July 11, 1912.)

Appeal from Trial Term, New York County.

Action by John S. Jones against George J. Gould and others. From a judgment for plaintiff and from an order denying a new trial, defendants appeal. Conditionally affirmed.

See, also, 146 App. Div. 943, 131 N. Y. Supp. 1122.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, MILLER, and DOWLING, JJ.

Allan McCulloh, of New York City, for appellants.

Edgar T. Brackett, of Saratoga, for respondent.

PER CURIAM. Judgment and order reversed and a new trial ordered, with costs to appellants to abide the event, unless plaintiff stipulates to reduce the judgment as entered, including interest, costs, and allowance, to the sum of $568,999.42; in which event the judgment as so reduced and the order appealed from are affirmed, without costs.

INGRAHAM, P. J. (dissenting). When this case was before this court on a former appeal (123 App. Div. 236, 108 N. Y. Supp. 31), we held that the defendants were not individually liable, upon the ground that, if the contract was made by the defendant Ramsey as the agent of a disclosed principal within the scope of his authority, the principal, and not the agent, was liable for a breach of the contract. See, also, 127 App. Div. 704, 111 N. Y. Supp. 993, where we applied the same principle in another action between the same parties to recover for a breach of the same contract upon which the plaintiff has recovered in this action. On a subsequent appeal to the Court of Appeals (200 N. Y. 18, 92 N. E. 1071), the only question presented was whether the complaint alleged a cause of action. It was there held that the complaint alleged facts which would sustain a recovery upon two grounds: First, it was alleged that the defendants had pledged their personal credit for the completion of the contract made by Ramsey with the plaintiff; and, second, that all the members of the syndicate were liable for a breach of a contract made by the defendants, and, as the defendants were members of the syndicate, they were liable with their associates.

I think that the undisputed evidence on the trial disproves both of these allegations. The defendants were the syndicate managers as individuals. They were authorized to act for the members of the syndicate, but there was nothing in the contract which authorized one manager to make a contract on behalf of the members of the syndicate, or that made the managers partners as between themselves. The managers were to conduct the business which the syndicate was organized to do, not as copartners, but as individuals, and were liable as members of the syndicate only if they acted within the scope of their authority. The Court of Appeals held that the allegation of the complaint was

sufficient to sustain the action as against the defendants if they made the promise there alleged. There was no allegation that the defendants, other than Ramsey, had authorized Ramsey to make a promise for them, or that there was any relation between the defendants, except that provided for by the syndicate agreement itself. It contained no provision that one of the managers could make a contract that would be binding on the other managers or on the members of the syndicate, and I can find no evidence that any promise was made to the plaintiff by any one but Ramsey; and he, as one of three agents, had no authority to make any promise that would be binding on the other managers or on the syndicate members. So that the allegation of the complaint that the defendants made the contract, or promised and agreed to pay to the plaintiff the amount which he paid and for the value of his services, was without proof to sustain a verdict in his favor; nor is there any evidence that Ramsey assumed to act for the other managers. He made no promise which was to bind them. The plaintiff testified that Ramsey told him "to go ahead and finance the deal temporarily for him. * * * He wanted the matter handled as quietly as possible, and through me if I could handle it, and that, as soon as I had acquired these lands and paid for them and brought proper title for the property, he would arrange with the Little Kanawha Syndicate for the members of that syndicate to pay me back immediately my money with interest and a fair commission compensation to pay me for doing all this work."

I can find no evidence that Ramsey occupied any other relation to the plaintiff from the beginning than that indicated by this testimony; and this testimony must be read in connection with the fact that the plaintiff had full knowledge of the syndicate agreement, and that, before this contract with Ramsey was made, plaintiff had become a member of the syndicate, and had signed the agreement, and thus had become one of the principals for whom the defendants were acting, and that by this very syndicate agreement it was provided that the members should not be partner with the managers or with one another, and that each subscriber should be liable only for the amount of his subscription. The arrangement was therefore between one of three agents and one of the principals by which they entered into a contract to carry out the objects for which the syndicate was organized, upon the promise of Ramsey that, when the plaintiff acquired the property, he (Ramsey) would arrange with the syndicate for its members to pay him back his money with interest and a commission. Ramsey failed to keep that promise; but this certainly impressed no obligation on the other defendants, who, so far as appears, had made no promise, and had given no authority to Ramsey or any one else to make such a promise. It is elementary that, if a person dealing with a firm have notice of a private agreement between the partners by which the liability of one partner is qualified, restricted, or defeated, he is bound by such arrangement, and could not enforce any right in contravention of it (Johnson v. Haws, 47 App. Div. 597, 62 N. Y. Supp. 641, affirmed 168 N. Y. 654, 61 N. E. 1130); and

such a limitation would certainly apply with full force where one partner seeks to enforce an obligation against his copartners.

The learned trial judge charged as matter of law that the syndicate agreement constituted the defendants copartners for the purpose of carrying out the provisions of the agreement; that in carrying on the business of a copartnership each partner has the power and authority to make contracts that are binding upon his copartners; that, if the jury found that Ramsey employed the plaintiff to do the work in connection with the purchase of the coal land or mining property, they could find a verdict against all the defendants. Thus the only question left to the jury was the making of the contract with Ramsey; and yet, as I view it, there was no evidence which imposed an obligation on these defendants to carry out Ramsey's obligations. The only partnership that existed was that between the members of the syndicate. The plaintiff and defendants were members of that partnership, and the copartnership agreement by its terms limited the liability of each of its members. But under no circumstances could Ramsey's contracts impose an obligation upon the other members of the syndicate. By the syndicate agreement the three defendants were appointed syndicate managers. There was no authority for one to act so as to bind the other managers or the other members of the syndicate; and it is a general rule that, when authority is given to two or more to do an act, the act is valid to bind the principal only when all concur in doing it. The power is understood to be joint, not several. Story on Agency (9th Ed.) p. 42; Hawley v. Keeler, 53 N. Y. 114. Ramsey's declaration was not evidence of his authority, and could not enlarge his authority to bind his principals beyond the express power granted to him by the instrument under which he was acting.

I think, therefore, from the undisputed evidence that the defendants Gould and Guy were not bound by the agreement made by Ramsey, either as managers or members of the syndicate, nor liable for the damages caused by Ramsey's failure to perform his contract, and that, therefore, the judgment and order appealed from should be reversed.